UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

AARON L. BENNETT,

Plaintiff,

-against-

CONCRETE SERVICES & MAINTENANCE CORP., BIG JOHN'S SERVICES CORP., ALLIED ENTERPRISES USA CORPORATION, ALLIED ENTERPRISES LLC, ALL COUNTY SOLUTIONS CORP., INTERSTATE SERVICES & MAINTENANCE USA CORP., MOOREGROUP CORPORATION a/k/a MOORE GROUP CORPORATION, JOHN MOORE, MANOLO PAZ, WILLY ANDRES DURAN LANTIGUA a/k/a WILLY A. DURAN, and MARK GALLIGAN,

Defendants.

**<u>COMPLAINT</u>**

**<u>JURY TRIAL DEMANDED</u>**

Plaintiff Aaron L. Bennett ("Plaintiff"), by his attorneys Sacco & Fillas, LLP, for his Complaint against Defendants, alleges as follows:

## 1. PRELIMINARY STATEMENT

1. This is an action for unpaid overtime compensation under the Fair Labor Standards Act, 29 U.S.C. § 201 et seq. (the "FLSA"), and the New York Labor Law (the "NYLL"). From approximately December 14, 2020 through December 13, 2024, Plaintiff worked as a welder and construction worker for a single construction operation, controlled by John Moore and operated as Mooregroup Corporation, that paid him through a succession of affiliated corporations.

2. Plaintiff regularly worked more than 40 hours in a workweek. Defendants paid him for his hours but did not pay him a proper overtime premium — one and one-half times his regular rate of pay — for the hours he worked in excess of 40.

3. Defendants understated Plaintiff's rate of pay on their formal payroll records, recording $25 per hour, and paid additional compensation for his hours worked through separate checks labeled "Expense" or "Allowance." Because that additional compensation was pay for hours worked, Plaintiff's regular rate was substantially higher than the $25 per hour Defendants recorded, and Defendants' overtime obligation was measured against that higher rate.

4. Plaintiff seeks his unpaid overtime wages, liquidated damages, statutory damages for wage notice and wage statement violations, prejudgment interest, and reasonable attorneys' fees and costs.

## 2. JURISDICTION AND VENUE

5. This Court has subject-matter jurisdiction over Plaintiff's FLSA claim under 28 U.S.C. § 1331 and 29 U.S.C. § 216(b), and supplemental jurisdiction over his NYLL claims under 28 U.S.C. § 1367(a) because those claims arise from the same facts and form part of the same case or controversy.

6. Venue is proper in this District under 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to the claims occurred in this District, where Plaintiff performed work in Brooklyn and Queens, and because most of the corporate Defendants maintain their principal places of business in this District, in Nassau County.

## 3. PARTIES

7. Plaintiff Aaron L. Bennett is an adult individual residing in Bronx, New York. At all relevant times he was Defendants' "employee" within the meaning of the FLSA, 29 U.S.C. § 203(e), and the NYLL §§ 190(2) and 651(5), and performed nonexempt manual labor.

8. Defendant Mooregroup Corporation a/k/a Moore Group Corporation ("Mooregroup") is a corporation with a principal place of business at 1 Jefferson Place, Baldwin, New York 11510. Mooregroup jointly employed Plaintiff throughout his employment.

9. Defendant Concrete Services & Maintenance Corp. ("Concrete Services") is a New York corporation, with an address for service of process at 105 Eastern Blvd., Baldwin, New York 11510. Concrete Services employed and paid Plaintiff from on or about its formation through at least early 2024.

10. Defendant Big John's Services Corp. ("Big John's") is a New York corporation formed November 30, 2021, with an address for service of process at 154 Montgomery Avenue, Oceanside, New York 11572. Big John's directly paid Plaintiff during 2023.

11. Defendant Allied Enterprises LLC ("Allied LLC") is a New York limited liability company with a principal office and address for service of process at 154 Montgomery Avenue, Oceanside, New York 11572.

12. Allied LLC directly paid Plaintiff during 2024 and issued pay statements identifying Plaintiff as its employee.

13. Defendant Allied Enterprises USA Corporation ("Allied USA") is a New York corporation with an address for service of process at 154 Montgomery Avenue, Oceanside, New York 11572.

14. Defendant All County Solutions Corp. ("All County") is a New York corporation with an address for service of process at 421A S. Franklin Street, Hempstead, New York 11550. All County directly paid Plaintiff in late 2024.

15. Defendant Interstate Services & Maintenance USA Corp. ("Interstate") is a Florida corporation that directly paid Plaintiff in or about November 2024.

16. Defendants Concrete Services, Big John's, Allied USA, Allied LLC, All County, and Interstate (the "Corporate Paymaster Defendants"), together with Mooregroup, at all relevant times operated as a single integrated enterprise and jointly employed Plaintiff. Each Corporate Paymaster Defendant directly employed Plaintiff during the period in which it issued his pay, and each

continued the same construction operation — the same work, the same workforce, the same management, and the same pay practices — as the entity that preceded it.

17. Defendant John Moore is an adult individual residing in New York who, at all relevant times, exercised operational control over the Mooregroup operation and the Corporate Paymaster Defendants, including control over the compensation and payroll practices applied to Plaintiff.

18. Upon information and belief, Mooregroup's construction workers were subject to common scheduling and timekeeping practices and were paid in the same manner. A New York court has since found that he exercised complete control over Mooregroup and diverted its funds.

19. Upon information and belief, John Moore has power to schedule workers' hours, set compensation, and a New York court has found that he dominated Mooregroup's finances.

20. Defendant Manolo Paz ("Paz") is an adult individual who, upon information and belief, resides in New York and served as a foreman and supervisor of the Mooregroup construction operation.

21. Paz hired Plaintiff, negotiated and set his hourly rate of pay, assigned his daily jobsites and work schedule, including Saturday work, and had authority to discharge him.

22. Paz is an "employer" within the meaning of 29 U.S.C. § 203(d) and NYLL §§ 190(3) and 651(6).

23. Defendant Willy Andres Duran Lantigua, also known as Willy A. Duran ("Duran"), is an adult individual who, upon information and belief, resides in Nassau County, New York.

24. Duran is, or at relevant times was, the president of Defendant Interstate.

25. Upon information and belief, during Plaintiff's employment Duran had and exercised authority over the payroll of multiple Corporate Paymaster Defendants, including Big John's, Allied USA, Interstate, and All County: payroll checks issued to Plaintiff by each of those

entities bear the same drawer signature, which is consistent with the name "Willy A. Duran." Those checks include the paired payroll and "Expense" or "Allowance" checks through which Defendants paid Plaintiff part of his compensation for hours worked outside his recorded rate of pay.

26. Upon information and belief, Duran therefore determined or controlled the rate and method of Plaintiff's pay, and he is an "employer" within the meaning of 29 U.S.C. § 203(d) and NYLL §§ 190(3) and 651(6).

27. Defendant Mark Galligan ("Galligan"), known to Plaintiff as "Mark" is an adult individual who, upon information and belief, resides in New York.

28. At all relevant times, Galligan served as a supervisor of the Mooregroup construction operation. Together with Paz, he hired Plaintiff.

29. Galligan directed Plaintiff's work by regular text message.

30. Galligan told Plaintiff which jobsite to report to each day and at what time, assigned his tasks, and decided whether Plaintiff would work on rain days and Saturdays.

31. When Plaintiff could not work a Saturday Galligan had assigned, Galligan replied that the work "has to be this Saturday" and that he would "send someone else."

32. Galligan also controlled where Plaintiff's paychecks were delivered: Plaintiff asked Galligan to have his checks sent to particular jobsites, and when a check was missing, Galligan told him where to find it.

33. Galligan had authority to hire and discharge Plaintiff.

34. Galligan is an "employer" within the meaning of 29 U.S.C. § 203(d) and NYLL §§ 190(3) and 651(6).

## 4. JOINT EMPLOYMENT AND INTEGRATED ENTERPRISE

35. Paz and Galligan managed Plaintiff throughout his employment, regardless of which entity's name appeared on his paycheck.

36. Big John's, Allied LLC, and Allied USA designate the same Oceanside, New York business address. Upon information and belief, a common online employment application names both Allied and Interstate. The same drawer signature appears on the payroll checks of multiple Corporate Paymaster Defendants.

37. Upon information and belief, the Corporate Paymaster Defendants were formed in succession between November 2021 and July 2024, used overlapping addresses and common management and payroll administration, and performed the same construction work with the same workforce, including Plaintiff, while the corporate name issuing Plaintiff's pay changed.

**5. <u>STATEMENT OF FACTS</u>**

38. Plaintiff is a welder who also performed rebar work, helper work, tile cutting, and jobsite cleanup. His work was manual labor and he was a nonexempt employee.

39. Plaintiff worked for Defendants from approximately December 14, 2020 until on or about December 13, 2024. He performed his work at Defendants' construction sites in New York City.

40. Paz and Galligan hired Plaintiff. Throughout his employment, Paz and Galligan assigned Plaintiff's hours, told him when to report and when he could leave, and directed his work; Paz negotiated his rate of pay. Upon information and belief, Defendants maintained records of Plaintiff's work hours.

41. Plaintiff regularly worked well in excess of 40 hours per week, typically Monday through Saturday, beginning at 7:00 a.m. and continuing into the late afternoon or evening.

42. Defendants regularly assigned Plaintiff Saturday work in addition to his weekday shifts. For example, Paz asked Plaintiff to work Saturdays. Galligan also assigned Plaintiff to Saturday work for a period. Plaintiff worked many other Saturdays, particularly in the summer months.

43. Defendants' payroll records document workweeks exceeding 40 hours. For example, one Defendants' pay statement recorded 5.5 overtime hours for the week and separately paid 16 "Missing Hours" at the straight $25 rate.

44. For his work, Plaintiff received two payments each pay period: a formal payroll check and pay stub recording an hourly rate of $25, and a separate check labeled "Expense" or "Allowance." The separate payment was not a reimbursement of any expense Plaintiff incurred; it required no receipts, was measured by the hours Plaintiff worked, and was additional compensation for his labor.

45. For example, in one pay period, Defendants issued a payroll check for $1,105.28 and a separate "Allowance" check for $1,231.72, together totaling $2,337.00, exactly 61.5 recorded hours at an agreed rate of $38 per hour. Defendants thus paid Plaintiff a flat hourly rate for all recorded hours, including hours over 40, while recording a $25 rate.

46. Defendants paid Plaintiff straight-time compensation for his hours but did not pay him one and one-half times his regular rate of pay for the hours he worked in excess of 40 in a workweek. To the extent Defendants paid any overtime premium, they computed it on the understated $25 rate rather than on Plaintiff's regular rate. Defendants owe the unpaid premium, less any overtime premium already paid.

47. The same split-payment practice — a formal payroll check recording $25 per hour plus a separate "Expense" or "Allowance" check for the balance — recurred across the successive Corporate Paymaster Defendants and throughout Plaintiff's employment, including in pay periods in 2022, 2023, and 2024.

48. Defendants employed, assigned, paid, and administered Plaintiff as a single workforce.

49. The Corporate Paymaster Defendants and Mooregroup constitute an enterprise engaged in commerce within the meaning of 29 U.S.C. § 203(r) and (s): they perform related construction activities through unified operation and common control for a common business purpose; their employees, including Plaintiff, handle goods and materials — including construction materials and equipment — that have moved in interstate commerce; and the enterprise's annual gross volume of business is not less than $500,000.

50. Defendants' violations were willful. The Mooregroup operation and John Moore had been defending federal overtime litigation brought by their construction workers, yet Defendants continued the split-payment practice that understated Plaintiff's recorded rate and overtime compensation through 2022, 2023, and 2024.

### 5.1. Defendants' Payroll Recordkeeping Practices.

51. Defendants did not keep accurate records of Plaintiff's daily and weekly hours, arrival and departure times, or regular and overtime wages.

52. Plaintiff was not given accurate wage statements with each payment of wages as required by the NYLL.

53. Plaintiff was not given a wage notice when his employer of record changed or when his rate of pay changed.

54. Defendants' wage notice and wage statement violations caused Plaintiff concrete injury, as follows.

55. Defendants' wage statements did not show Plaintiff's true rate of pay, his gross wages, or a correctly computed overtime rate. This allowed Defendants to conceal the violation, and it delayed Plaintiff's receipt of the wages he was owed.

## 6. CAUSES OF ACTION

### 6.1. Unpaid Overtime — Fair Labor Standards Act, 29 U.S.C. § 207

56. Plaintiff repeats and realleges the foregoing paragraphs as if fully set forth herein.

57. At all relevant times, Defendants were Plaintiff's employers within the meaning of 29 U.S.C. § 203(d), Plaintiff was their nonexempt employee, and Defendants were an enterprise engaged in commerce within the meaning of 29 U.S.C. § 203(s)(1)(A).

58. Defendants violated 29 U.S.C. § 207(a) by failing to pay Plaintiff one and one-half times his regular rate of pay for the hours he worked in excess of 40 in each workweek, including by excluding the "Expense" and "Allowance" compensation from his regular rate and by treating hours worked over 40 as straight time.

59. Defendants' violations were willful within the meaning of 29 U.S.C. § 255(a), and Plaintiff is therefore entitled to a three-year limitations period.

60. As a result, Plaintiff is entitled to recover his unpaid overtime wages, an additional equal amount in liquidated damages, prejudgment interest, and reasonable attorneys' fees and costs under 29 U.S.C. § 216(b).

### 6.2. Unpaid Overtime — New York Labor Law §§ 650 et seq., 663; 12 N.Y.C.R.R. § 142-2.2

61. Plaintiff repeats and realleges the foregoing paragraphs as if fully set forth herein.

62. At all relevant times, Defendants were Plaintiff's employers within the meaning of the NYLL §§ 190(3) and 651(6), and Plaintiff was their nonexempt employee.

63. Defendants violated 12 N.Y.C.R.R. § 142-2.2 by failing to pay Plaintiff one and one-half times his regular rate of pay for the hours he worked in excess of 40 in each workweek.

64. As a result, Plaintiff is entitled to recover his unpaid overtime wages, liquidated damages equal to 100% of the unpaid wages under NYLL § 663, prejudgment interest, and reasonable attorneys' fees and costs.

### 6.3. Wage Notice and Wage Statement Violations - NYLL §§ 195(1), 195(3), 198

65. Plaintiff repeats and realleges the foregoing paragraphs as if fully set forth herein.

66. NYLL § 195(1) requires a written wage notice at hiring stating, among other things, the rate of pay and regular pay day, and NYLL § 195(3) requires an accurate wage statement with every payment of wages showing the rate of pay, hours worked, gross wages, deductions, allowances, and net wages.

67. Plaintiff was not provided with an accurate wage notice or accurate wage statements as required by NYLL § 195(1) and (3).

68. Each Defendant failed to comply with the notice and record keeping requirements of NYLL § 195(1) and (3). Plaintiff is therefore entitled to statutory damages under NYLL § 198(1-b) and (1-d), up to $5,000 for each violation, together with attorneys' fees and costs.

## 7. PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that the Court enter judgment:

a. On the First Cause of Action, awarding unpaid overtime wages under the FLSA in an amount to be determined at trial, together with an additional equal amount in liquidated damages, under 29 U.S.C. § 216(b);

b. On the Second Cause of Action, awarding unpaid overtime wages under the NYLL in an amount to be determined at trial, together with liquidated damages equal to 100% of the unpaid wages under NYLL § 663, Plaintiff electing the greater of the FLSA or NYLL liquidated-damages award and not seeking cumulative liquidated damages under both statutes for the same wages;

c. On the Third Cause of Action, awarding statutory damages under NYLL § 198(1-b) and (1-d);

d. Awarding prejudgment and post-judgment interest;

e. Awarding reasonable attorneys' fees and costs under 29 U.S.C. § 216(b) and NYLL § 663; and

f. Granting such other and further relief as the Court deems just and proper.

## 8. JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

Dated: Queens, New York
November 23, 2026

SACCO & FILLAS LLP

By: *__/s/ Clifford Tucker__*
Clifford Tucker, Esq.
3119 Newtown Ave, Seventh Floor
Astoria, NY 11102
Tel: 718-269-2243
Fax: 718-559-6517
CTucker@SaccoFillas.com
*Attorneys for Plaintiff Aaron L. Bennett*

## CONSENT TO JOIN ACTION

## REQUEST TO BECOME A PARTY-PLAINTIFF

I hereby consent to be a party plaintiff in an action to recover unpaid wages, including but not limited to minimum wages, overtime, spread of hours, gratuities, statutory and liquidated damages, attorney's fees, costs, interest, and other sums owing to me and other similarly situated employees under each and every federal and state wage and hour law, rule and regulation which may include but is not limited to the federal Fair Labor Standards Act, New York Labor Law, New Jersey Wage and Hour Law, and any other applicable law, rule, regulation, and wage order. If I am not a named Plaintiff(s), I authorized the named Plaintiffs to make all decisions involving this litigation and settle this action on behalf. I hereby authorize Sacco & Fillas LLP to pursue any claims I may have, including such litigation as may be necessary, and I hereby consent, agree, and option to become a plaintiff herein and to be bound by any settlement of this action or adjudication by the Court.

Name: Aaron Bennett [print full name]

Legal Representative:
Sacco & Fillas LLP
3119 Newtown Ave, Seventh Floor
Astoria, NY 11102

Signature: Aaron Bennett (Aug 3, 2026 17:06:49 EDT)    Date: 03/08/2026